Filed 9/1/15  Peterson v. Rubio CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION THREE

|  |  |
|---|---|
| SUSAN A. PETERSON, | |
| Plaintiff and Appellant, | G049526 |
| v. | (Super. Ct. No. 30-2011-00521147) |
| RAUL RUBIO et al., | O P I N I O N |
| Defendants and Respondents. | |

Appeal from a judgment of the Superior Court of Orange County, David T. McEachen, Judge.  Affirmed in part, reversed in part, and remanded with directions.

Thomas Vogele & Associates, Thomas A. Vogele and Timothy M. Kowal for Plaintiff and Appellant.

Nialis Law Group and Mark A. Nialis for Defendants and Respondents.

\*          \*          \*

## INTRODUCTION AND SUMMARY

Plaintiff Susan A. Peterson (Plaintiff) and defendants Raul and Noemi Rubio (Defendants) entered into a business transaction. Plaintiff understood the transaction to be a loan from Defendants, secured by a promissory note she owned. Defendants understood the transaction to be a purchase and sale of the promissory note. When their divergent understandings came to light, Plaintiff sued Defendants for rescission, financial elder abuse, and usury. After a bench trial, the court found in favor of Defendants.

Plaintiff maintains the transaction was a loan, not a sale; Defendants could not unilaterally repudiate the loan agreement nor could they elect to purchase her note without giving new consideration; and alternatively, if the transaction was a sale of her note, it should be rescinded because there was no meeting of the minds or she made a mistake of fact in executing the transaction documents. She also claims the interest rate was usurious, and the court mistakenly failed to reach the merits of her elder abuse claim.

We reverse the judgment in favor of Defendants on Plaintiff's rescission claim. The court erroneously concluded the transaction documents could be read separately, rather than recognizing they were parts of one agreement which governed a single transaction. The court also incorrectly concluded the transaction documents gave Defendants the option to choose between a loan and a sale, and that the sale document had superseded the loan document. Besides, the parties' contradictory understandings regarding the essential nature of the transaction as a loan or a sale are so fundamental the entire transaction must be rescinded. Thus, we remand with instructions to rescind the transaction and restore the parties to the status quo ante. This disposition moots Plaintiff's claim the exorbitant rate of interest to be paid on the loan was usurious.

We affirm the judgment in favor of Defendants on Plaintiff's elder abuse claim. The court found Plaintiff failed to prove Defendants intended to defraud her and that finding is supported by substantial evidence.

2

## FACTS AND PROCEDURAL HISTORY

Plaintiff owned a $420,000 promissory note (Jaleel Note) made in 2002 by Mohammed and Aracely Jaleel, which was secured by a deed of trust (Jaleel Trust Deed) encumbering a commercial property in Vallejo (Vallejo Property). The Jaleel Note paid Plaintiff $2,926 monthly and matured in 2027. Plaintiff was retired and relied on these payments for her retirement.

The disputed transaction was the second of two between Plaintiff and Defendants. Their first transaction was in 2005. At that time Plaintiff's son, Andrew (Drew), wanted to purchase, remodel, and sell for a profit a home in San Francisco (San Francisco Property). Because Drew did not have the money for the down payment, Plaintiff agreed to borrow the down payment money and purchase the San Francisco Property for him.

Drew introduced Plaintiff to Paul Phillips. Phillips arranged for Defendants to make a $270,000 loan (2005 Loan) to Plaintiff, for a period of 12 months, to purchase the San Francisco Property. Plaintiff and Phillips executed a "Loan Agreement-Bridge Loan," which set forth all of the 2005 Loan terms. The 2005 Loan was evidenced by a promissory note and secured in part by a third deed of trust on the San Francisco Property.

The 2005 Loan was also secured by the Jaleel Note. To that end Plaintiff delivered the Jaleel Note to Defendants, and executed an "Assignment of Deed of Trust" assigning her beneficial interest under the Jaleel Trust Deed to them. A "Loan Sale Agreement," which would have granted Defendants a "first priority security interest" in the Jaleel Note and the Jaleel Trust Deed, was prepared but never executed. Even so, Plaintiff executed a "Limited Power of Attorney" in favor of Defendants as required by the terms of the unexecuted Loan Sale Agreement, together with a "Notice of Transfer of Servicing Rights" under the Jaleel Note to Defendants, which was to become effective only if she defaulted on the 2005 Loan.

3

Plaintiff did default on the 2005 Loan, but in 2006 she refinanced the San Francisco Property and paid off the 2005 Loan. The Notice of Transfer of Servicing Rights was never given to the Jaleels and, during the term of the 2005 Loan, the Jaleels continued to make all payments under the Jaleel Note to Plaintiff.

In 2007 Plaintiff contacted Phillips to obtain another loan to pay off the refinanced mortgage on the San Francisco Property that apparently was then in default. On August 31, 2007, Phillips e-mailed Drew that one of his investors would make the loan. Plaintiff would borrow $125,000, assign the Jaleel Note and "temporarily transfer payments" under the Jaleel Note directly to the lender for five years. When the loan was paid off the Jaleel Note would be returned to Plaintiff.

On September 3, Drew asked Phillips what was needed to finalize the loan, and Phillips told him "the same paperwork as last time" plus a "transfer of payments [under the Jaleel Note] to the investor and a site inspection." The investor also wanted to meet the Jaleels. When asked what the "same paperwork" was, Phillips replied it was a note, an assignment of the Jaleel Trust Deed, and an assignment of payments on the Jaleel Note for a period of 60 months.

Phillips prepared an agreement entitled "Loan Agreement-Bridge Loan" dated September 6, 2007 (Loan Agreement), which set forth all of the loan terms and was signed by Plaintiff and Defendants. The Loan Agreement, like the one executed in connection with the 2005 Loan, stated: "This is a Loan Agreement to facilitate financing on the subject property with a Bridge Loan." (Underscoring and italics omitted.) Plaintiff would borrow up to $125,000 from Defendants, at an interest rate of 2.167% per month, which rate was supposed to (but actually did not) result in a monthly interest only payment on the loan approximately equal to the $2,926 monthly payment under the Jaleel Note.

The loan was to be secured by a first trust deed on the Vallejo Property. As additional collateral, the Jaleel Note was to be "conveyed" to Defendants "with

4

transfer of [the Jaleel Note] payments until the [2007 Loan] is paid in full." Plaintiff was to pay a $25,000 "origination fee" to Universal Capital Investments, Inc. (Phillips), plus a $500 "commitment fee" upon acceptance and a $10,000 "exit fee" at maturity to Defendants. (Capitalization omitted.)

Sometime after September 6 and before September 11 Phillips sent Drew a "Loan Sale Agreement" (Loan Sale Agreement). (Capitalization omitted.) The Loan Sale Agreement was a dual purpose document, and that duality is the crux of this dispute. On the one hand, it provided Plaintiff was to "sell and assign" to Defendants the loan (Jaleel Loan) evidenced and secured by the Jaleel Note and the Jaleel Trust Deed, and it recited, "[Plaintiff] acknowledges that this transaction is a sale of all of [Plaintiff's] interest in the [Jaleel Loan], not a grant of a security interest to secure a loan."

On the other hand, the Loan Sale Agreement also recited: "However, if such conveyance is deemed to be in respect of a loan, it is intended that (i) the rights and obligations of the parties shall be established pursuant to the terms of this Agreement; (ii) [Plaintiff] hereby grants to [Defendants] a first priority security interest in all of [Plaintiff's] right, title and interest in . . . the [Vallejo Property]; and (iii) this Agreement shall constitute a security agreement under applicable law."

On September 11, ostensibly because of a problem with Drew's e-mail, Phillips re-sent him the Loan Agreement, the Loan Sale Agreement, a "Notice of Transfer of Servicing Rights," and a "Limited Power of Attorney," all dated as of September 7. Plaintiff signed both the Loan Agreement and the Loan Sale Agreement that same day.

On September 14 Plaintiff wired Phillips the $500 commitment fee due to Defendants under the Loan Agreement.

On September 15 Defendants signed the Loan Agreement.

5

On September 17 Phillips sent Drew an e-mail stating the commitment fee had been paid to Defendants and reiterating that Defendants were loaning Plaintiff "$125,000 as in the Loan Agreement."

On September 24 Phillips sent escrow an e-mail with a "loan agreement for the amount of $125,000." He advised: "This is a loan that is being made to Susan Peterson by one of my private investors Raul & Noemi Rubio. The collateral is a 1st TD on 922 Tennessee St. in Valejo [sic] CA called the Jaleel Note that Susan has transferred all rights and payments to the Rubios until the loan is paid off. . . . See attached fully executed loan agreement for this transaction. Docs still required to fund are: Loan Sale agreement and Transfer of Servicing Rights."

On September 25 Plaintiff signed an "Assignment of Deed of Trust Escrow Instructions" (capitalization omitted; Escrow Instructions) which recited Defendants as "Assignee" handed the escrow holder the sum of $125,000, "Approved copies of Loan Sale Agreement," a preliminary title report, and "new financing." Defendants had not yet signed the Escrow Instructions.

On September 26 Raul Rubio (Rubio) had a conference with Phillips and Drew. Rubio advised them he had done his due diligence and decided to buy the Jaleel Note, rather than make another loan to Plaintiff. Defendants signed the Loan Sale Agreement that day. No documents were ever executed and no instructions were ever given to rescind the Loan Agreement.

Also on September 26 Plaintiff signed an "Assignment of Deed of Trust" (Assignment of Deed of Trust), in substantially the same form as the one she executed in connection with the 2005 Loan, which once more assigned her beneficial interest under the Jaleel Trust Deed to Defendants.

Plaintiff also signed a "Limited Power of Attorney" (capitalization omitted) dated September 7 (Limited Power of Attorney) in favor of Defendants as required by the Loan Sale Agreement, in the same form as the one used for the 2005 Loan.

6

On or about September 28 Plaintiff signed a "Notice of Transfer of Servicing Rights" dated September 7 (Notice of Transfer of Servicing Rights), again in the same form as the one used for the 2005 Loan, which directed the Jaleels to begin making payments under the Jaleel Note to Defendants on September 28.

On September 28 the escrow closed, the net proceeds were wired to Plaintiff, and the Assignment of Deed of Trust was recorded. The closing statement sent to Plaintiff that day characterized the 2007 transaction as a loan.

Sometime after September 28 and before October 6, Defendants sent the Notice of Transfer of Servicing Rights to the Jaleels.

On December 1 Phillips emailed Rubio: "Raul, I just got a request from Drew about how long would you want to extend the agreement on the Jaleel [N]ote payments for $55,000 more in additional cash to [Plaintiff]."

On December 31 Phillips e-mailed Defendants: "I have not heard back from [Plaintiff] and Drew on your offer to buy the [Jaleel] note. They wanted you to offer them $50,000[;] you offered $35,000 with my commission. I will let you know if I hear anything." There is nothing in the record showing a response. When asked about this e-mail at trial, Phillips testified the 2007 transaction was a loan, with the Jaleel Note as additional collateral in case there was a default.

In 2008 and again in 2009 Plaintiff asked Phillips for statements of interest paid for her income tax returns. Phillips never responded to her requests.

In November 2009 Plaintiff wrote Defendants a letter which stated: "On September 7, 2007 I secured a private loan from you. Since that time I haven't heard from you as to the status of the loan. In reading the paper work I see nothing that says how many payments or how many months to pay off the loan. I had my lawyer look at it and he suggested I contact you. I need to know the following: [¶] Is Mr. Jaleel still paying on the [Jaleel Note]? [¶] How many months are left on the loan? [¶] How much is owing on the loan as of December 2009?"

7

Plaintiff's letter went on to explain she had been laid off from her teaching job and had a very low pension since she had only taught for nine years. She was then 73 and "need[ed] to know how soon the [Jaleel Note would] be returned to [her] so [she could] continue to live in [her] home." She had lost the San Francisco Property and was trying not to lose her home.

Defendants never responded to Plaintiff's letter.

In 2010 Phillips told Plaintiff she had sold the Jaleel Note to Defendants.

Thereafter, Plaintiff sued Defendants, Phillips (who defaulted), and others. Her second amended complaint contained causes of action for financial elder abuse, rescission based on mistake, and violation of the usury laws.

The elder abuse cause of action alleged Defendants represented to Plaintiff they would loan her $125,000 to be repaid by her assignment of the payments due under the Jaleel Note until her loan was paid off, at which time the Jaleel Note and its proceeds would be returned to her. These representations were allegedly false because Phillips induced her to sign the Loan Sale Agreement.

The rescission cause of action was directed at the Loan Sale Agreement only. Plaintiff alleged that when she signed it she mistakenly believed it documented a loan from Defendants. She alleged Defendants knew of her mistake and took advantage of it when Phillips presented both the Loan Agreement and the Loan Sale Agreement to them at the same time. She would not have signed the Loan Sale Agreement but for the mistake.

The usury cause of action alleged the Loan Agreement documented a loan for $125,000, with interest payable at the usurious rate of 2.167 percent per month or 26.004 percent per annum. Plaintiff alleged the Jaleels had paid Defendants approximately $2,900 per month for 24 months and she was entitled to recover all of those payments plus treble damages. She also sought a declaration that the interest rate was void.

8

The case was tried to the court sitting without a jury. Plaintiff testified no one told her the 2007 transaction was anything other than a loan. She believed all of the documents she signed, including the Loan Sale Agreement, were part of a loan, not a sale of the Jaleel Note. She thought she understood those documents, but her understanding was that the transaction was a loan. She would never have sold the $420,000 Jaleel Note for $100,000.

Rubio testified Phillips presented the Loan Agreement to him as a proposal, subject to change and due diligence, and that he signed it with the understanding that if everything was okay he would go ahead and make the loan. At the same time Phillips also presented him with the Loan Sale Agreement which had already been signed by Plaintiff, and Rubio inquired "Why is that?"

Phillips replied: "You have a choice. You have a choice. Read the proposal and read the sale contract and decide. Do your due diligence." Rubio took the documents home to conduct due diligence and decide what he was going to do. Later, recalling the nightmare of not being paid when Plaintiff defaulted on the 2005 Loan, Rubio decided he did not want to lend Plaintiff any money.

At the conclusion of the trial the court ruled in Defendants' favor and rendered a detailed written statement of decision.

In denying Plaintiff's rescission claim, the court first found she failed to prove the 2005 Loan and the 2007 transaction were identical. The court noted the 2005 Loan was supported by execution of a promissory note and a limited power of attorney, and the Jaleels continued to make Jaleel Note payments to Plaintiff. More importantly a loan sale agreement was not executed in connection with the 2005 Loan.

As for the 2007 transaction, the court noted the Loan Sale Agreement was executed, with the Assignment of Deed of Trust and the Notice of Transfer of Servicing Rights, which resulted in the Jaleels making payments on the Jaleel Note to Defendants. Also, Plaintiff did not execute a promissory note in the 2007 transaction.

9

Further, the court found Plaintiff failed to prove by clear and convincing evidence that she was mistaken in entering into the Loan Sale Agreement. Rather, she admitted she understood Loan Agreement and the Loan Sale Agreement "and had no infirmity" when she signed these documents.

Plaintiff also did not prove there was a loan in the 2007 transaction. Plaintiff admitted she understood the provision of the Loan Agreement that stated: "This Loan Agreement-Bridge Loan is a Letter of Commitment and is subject to change based on additional information received and further due diligence." And again, the Loan Agreement anticipated a promissory note but none was executed.

Next the court found the only agreement in effect was the Loan Sale Agreement, which "superseded" the Loan Agreement, because: the Loan Agreement was never consummated with a promissory note; the Loan Sale Agreement was later in time; Defendants executed the Loan Agreement with the understanding they could choose between that "proposal" and the Loan Sale Agreement; Rubio told Phillips and Drew he would not lend Plaintiff any more money; Rubio decided to purchase the Jaleel Note and executed the Loan Sale Agreement on September 26; Plaintiff "confirmed" the Loan Sale Agreement on September 25 by signing the Escrow Instructions which were later in time; Plaintiff executed the Assignment of Deed of Trust on September 26; Plaintiff executed the Notice of Transfer of Servicing Rights on or about September 28; and Plaintiff's admission that she understood these documents contradicted her mistake, fraud, and usury claims.

The court also ruled Plaintiff's elder abuse claim failed, because she did not prove Defendants intended to defraud her. Philips was Plaintiff's agent, because she was the one who asked him to seek "investors" to loan her money, and Phillips had assisted her with "numerous transactions, including the Loan Sale Agreement." Plus Drew was Plaintiff's "ostensible, apparent, and implied agent" and Plaintiff was estopped from claiming otherwise.

10

The court further found Plaintiff and Defendants never spoke directly to each other. Plaintiff chose Phillips and Drew to be the conduit for her communications with Defendants. Because Plaintiff relied on Phillips and Drew, Defendants had no need to contact her.

Defendants communicated to Plaintiff through Drew their decision not to loan Plaintiff money and instead to purchase the Jaleel Note. Also, Plaintiff admitted she retained Phillips and authorized him to act on her behalf. And Defendants closed escrow in accordance with the terms of the Loan Sale Agreement as evidenced by the Escrow Instructions.

Lastly, the court ruled Plaintiff failed to prove her usury claim due to her status as a California Finance Lender. Moreover, she did not execute a promissory note and she did not make any interest payments to Defendants. The only payments made were by the Jaleels. Thus, Plaintiff was not damaged.

Thereafter the court granted Defendants' motion for attorney fees and costs, and awarded judgment against Plaintiff in the amount of $142,822.46.

## DISCUSSION

*1. Rescission*

*a. The Loan Agreement and Loan Sale Agreements Must Be Read Together.*

Plaintiff contends the Loan Agreement and the Loan Sale Agreement must be read together. We agree. "Several contracts relating to the same matters, between the same parties, and made as parts of substantially one transaction, are to be taken together." (Civ. Code, § 1642.) "The language of [Civil Code section] 1642 . . . has been somewhat broadened by construing it as a declaration of common law principles. It refers expressly to 'several *contracts*,' as parts of 'substantially one transaction.' Nevertheless, it has been held that several writings need not each be contracts, and that they need not be

11

executed on the same day or within any particular period of time. [Citations.]" (1 Witkin, Summary of Cal. Law (10th ed. 2005) Contracts, § 747, p. 836.)

Plaintiff and Defendants are parties to both the Loan Agreement and the Loan Sale Agreement, and they executed both documents within a relatively short period of time. The Loan Agreement is dated September 6, while the Loan Sale Agreement recites it was entered into as of September 7. Plaintiff signed the Loan Agreement and the Loan Sale Agreement on September 11. Defendants signed the Loan Agreement on September 15, and the Loan Sale Agreement on September 26.

The Loan Agreement plainly contemplated other documents, including the Loan Sale Agreement. For example it specified: "COLLATERAL: Property known as: 1st TD on this property: 922 Tennessee St. Vallejo, CA 94590." (Underscoring omitted.) It also listed: "ADDITIONAL COLLATERAL: A Note on a property located at: 922 Tennessee Street Vallejo, CA 94590. The Payee of the Jaleel note will be conveyed to Raul & Noemi Rubio with transfer of payments until the above described loan is paid in full." And it spelled out: "CONDITIONS: This proposal and funding of loan is 'subject to': [¶] 1) Clear Title and Recording the investor as Payee on 922 Tennessee St. Vallejo, CA 94590." (Underscoring omitted.)

Likewise, the Loan Sale Agreement obviously contemplated the Loan Agreement, because it stipulated: "However, if such conveyance is deemed to be in respect of a loan, it is intended that (i) the rights and obligations of the parties shall be established pursuant to the terms of this Agreement; (ii) [Plaintiff] hereby grants to [Defendants] a first priority security interest in all of [Plaintiff's] right, title and interest in, to and under . . . the [Vallejo Property]; and (iii) this Agreement shall constitute a security agreement under applicable law." In addition, Exhibit B to the Loan Sale Agreement regarding exceptions to representations and warranties stated: "See Loan Agreement 9/7/07."

12

Based on these facts, we conclude the Loan Agreement and the Loan Sale Agreement are both part of a single transaction and must be read together. It follows the court erred in concluding the Loan Sale Agreement could be read separately.

*B. Defendants Had No Option to Choose Between a Loan and a Sale.*

The court found Defendants executed the Loan Agreement "with the knowledge that [they] had the choice to select between that proposal and the Loan Sale Agreement." Presumably that finding was based on the undisputed testimony of Rubio that when Phillips presented the Loan Agreement and the Loan Sale Agreement (both executed by Plaintiff) to Rubio, Phillips told Rubio: "You have a choice. Read the [loan] proposal and read the [loan] sale contract and decide."

But finding Defendants had that "knowledge" or subjective understanding is not the same as finding Defendants actually had the option to choose between a loan secured by the Jaleel Note and a sale of the Jaleel Note. Instead the question of whether Defendants actually had that option involves interpretation of the Loan Agreement and the Loan Sale Agreement. Furthermore, because the court made no finding on the question, and because the question does not depend on the credibility of conflicting extrinsic evidence, the interpretation of the written documents presents a question of law for our de novo review. (*Mayer v. C.W. Driver* (2002) 98 Cal.App.4th 48, 57.)

Defendants have not directed our attention to any provision of the Loan Agreement or the Loan Sale Agreement which gave them the option to choose between a loan secured by, or a purchase of, the Jaleel Note. What is more, our careful review of the Loan Agreement and the Loan Sale Agreement found no such provision in either document. In fact the opposite is true. Reading the two documents together as one agreement, and giving "effect to every part" as we must (Civ. Code, § 1641), there is no interpretation which gave Defendants an option to choose between a loan and a sale.

13

*c. The Loan Sale Agreement Did Not Supersede the Loan Agreement.*

The court concluded the Loan Sale Agreement superseded the Loan Agreement. This conclusion was based in part on the court's mistaken finding the two documents could be read separately, and the court's erroneous assumption Defendants had the option to choose between a loan and a sale.

The court's conclusion was also based in part on the factual finding the Loan Sale Agreement was "subsequent in time" because it was signed later. However, the first paragraph of the Loan Sale Agreement recited it was "entered into and is effective as of this 7th day of September, 2007," and the last paragraph recited it was executed "as of the date first above written." These recitals "are conclusively presumed to be true as between" Plaintiff and Defendants. (Evid. Code, § 622.) Thus, as a matter of law, the Loan Sale Agreement was earlier than the Loan Agreement, not later.

The court's conclusion the Loan Sale Agreement superseded the Loan Agreement was also based in part on the factual finding Plaintiff "confirmed the Loan Sale Agreement by signing the Assignment of Deed of Trust and Escrow Instructions which were later in time and after the [Loan Agreement] was executed." This is a mixed question of law and fact, so we review the court's findings regarding any disputed issues of fact under the substantial evidence standard, but we apply our independent judgment to the conclusions of law which flow from those facts. (*Dyanlyn Two v. County of Orange* (2015) 234 Cal.App.4th 800, 807-808.)

It is undisputed the Escrow Instructions and the Assignment of Deed of Trust itself were signed by Plaintiff on September 25 and September 26, respectively, while the Loan Agreement was signed by Plaintiff on September 11 and by Defendants on September 15. So the court correctly found, as matters of fact, the Escrow Instructions and the Assignment of Deed of Trust were later in time and after the Loan Agreement was executed.

14

Too, as the court found, the Escrow Instructions "clearly" stated Defendants handed escrow: "1. Funds in the amount of $125,000 . . . ; [¶] 2. Approved copies of Loan Sale Agreement; [¶] 3. Approved copy of the Preliminary Title Report. . . ; [¶] 4. Approved copy of new financing superior to the Deed of Trust being assigned . . . ." And Plaintiff did execute and have notarized the Assignment of Deed of Trust "outside the presence" of Defendants.

But none of these undisputed factual findings supports the court's legal conclusion the Loan Sale Agreement superseded the Loan Agreement. Nothing in either the Escrow Instructions or the Assignment of Deed of Trust is inconsistent with any provision of the Loan Agreement. Plus, the Assignment of Deed of Trust was plainly contemplated by the Loan Agreement, and it is identical to the assignment of deed of trust Plaintiff executed, notarized and recorded for the 2005 Loan.

For all of these reasons, we conclude the court erred in finding the Loan Sale Agreement superseded the Loan Agreement.

### d. *The Entire 2007 Transaction Must Be Rescinded.*

Plaintiff sought rescission under Civil Code section 1689, subdivision (b)(1) which provides: "A party to a contract may rescind the contract . . . . [¶] (1) If the consent of the party rescinding, or of any party jointly contracting with him, was given by mistake . . . ." (See also Civ. Code, § 1567, subd. 5 [apparent consent not real or free when obtained through mistake].) The statute does not require the mistake to be mutual.

The mistake can be a mistake of fact or law (Civ. Code, §§ 1577, 1578). As for mistake of fact: "If there is mutual assent as to the subject matter and the parties to the agreement, a contract results; but it may be voidable and subject to rescission where there is a harmful mistake as to some basic or material fact that induced plaintiff to enter into it." (1 Witkin, Summary of Cal. Law, *supra*, Contracts, § 260, pp. 288-289.)

However, mistake of law warrants rescission "only when it arises from: [¶] 1. A misapprehension of the law by all parties, all supposing that they knew and

15

understood it, and all making substantially the same mistake as to the law; or, [¶] 2. A misapprehension of the law by one party, of which the others are aware at the time of contracting . . . ." (Civ. Code, § 1578.) "Relief is proper and commonly given, where a mutual mistake relates to a *specific private right*; i.e. ignorance as to legal rights or obligations under a contract (mistake of law) is treated in much the same way as a mistake of fact. [Citations.]" (1 Witkin, Summary of Cal. Law, *supra*, Contracts, § 273, p. 304.)

Applying these principles leads us to conclude the court erred by denying rescission. The court found Defendants executed the Loan Agreement "with the knowledge that [they] had a choice to select between that proposal and the Loan Sale Agreement," and substantial evidence supports that finding. Also, undisputed evidence shows Defendants executed the Loan Sale Agreement with the same understanding. Nevertheless, as we have explained, that understanding was mistaken.

Defendants' mistaken understanding was either a unilateral mistake as to a basic fact, or one side of a mutual mistake of law by all parties supposing they knew and understood it. If it is the former, then Plaintiff is entitled to rescind the transaction under Civil Code sections 1689 and 1577. If it is the latter, then Plaintiff is entitled to rescind the transaction under Civil Code sections 1689 and 1578, subdivision 1.

Similarly, undisputed evidence shows Plaintiff executed both the Loan Agreement and the Loan Sale Agreement with the understanding the transaction was a loan, which was secured by the Jaleel Note. To the extent the court purported to find otherwise, that finding is not supported, in fact or in law, and cannot be sustained. Plaintiff's testimony she understood both the Loan Agreement and the Loan Sale Agreement and that she had no infirmity when she signed them is irrelevant, because she understood the Loan Sale Agreement was a "security instrument" deemed to be given "in respect of" a loan. Thus Plaintiff's understanding too was either one side of a mutual mistake of law, which warrants rescission under Civil Code sections 1689 and 1578,

16

subdivision 1, or a unilateral mistake, which warrants rescission under Civil Code sections 1689 and 1577.

So regardless of whether they are characterized as two unilateral basic mistakes of fact, or one substantially similar mutual mistake of law, the result is the same. The parties' misunderstandings were so fundamental there was no meeting of the minds and the entire 2007 transaction must be rescinded. This relief is broader than what Plaintiff specifically sought at trial, but it is still within her prayer for "such other and further relief as the court may deem just and proper and according to equity."

Defendants contend *Hedging Concepts, Inc. v. First Alliance Mortgage Co.* (1996) 41 Cal.App.4th 1410 (*Hedging*) dictates a contrary result. We disagree. It is true the *Hedging* court said "courts will not set aside contracts for mere subjective misinterpretation." (*Id*. at p. 1421.) Still that statement must be considered in context. The *Hedging* court found neither subdivision 1 nor subdivision 2 of Civil Code section 1578 applied, based "on the facts found by the trial court." (*Hedging*, at p. 1421.) Subdivision 1 did not apply because the trial court found one of the parties "made no mistake at all, but rather understood the contract correctly." (*Hedging*, at p. 1421.) Subdivision 2 did not apply because there was no "finding (nor any evidence) that either party knew at the time of contract that the other side misunderstood the deal, and yet failed to rectify that misunderstanding."

But in this case, unlike in *Hedging*, Civil Code section 1578, subdivision 1 does apply, because even though the court found Defendants made no mistake at all, that finding was erroneous for all of the reasons discussed above. And here, unlike in *Hedging*, Civil Code section 1577 applies, since Plaintiff and Defendants both made unilateral mistakes of fact which negated their apparent consent to the 2007 transaction. Consequently, *Hedging* is simply inapplicable to the facts of this case.

17

*e. The Parties Must Be Returned to the Status Quo Ante.*

"If in an action or proceeding a party seeks relief based upon rescission, the court may require the party to whom such relief is granted to make any compensation to the other which justice may require and may otherwise in its judgment adjust the equities between the parties." (Civ. Code, § 1692.) "The successful plaintiff is entitled to restitution, i.e., to recovery of the consideration that he or she gave and any other compensation necessary to make him or her whole. [Citations.]" (1 Witkin, Summary of Cal. Law, *supra*, Contracts, § 937, p. 1031.) Conversely, the plaintiff must, "Restore to the other party everything of value which he has received from him under the contract . . . upon condition that the other party do likewise . . . ." (Civ. Code, §1691, subd. (b).)

These principles require that the parties be restored to the status quo ante. And because doing so will necessarily involve making factual determinations and may require taking further evidence, this task is better left to the trial court in the first instance on remand. Nevertheless, we offer the following thoughts for guidance. These are only tentative thoughts, and they may not cover all of the restitution issues to be addressed.

Plaintiff must return to Defendants the full $125,000 loan amount/purchase price paid, plus interest at the legal rate from the date received, September 28, 2007.

Defendants must return to Plaintiff: all of the monthly payments made to Defendants under the Jaleel Note, and the $500 commitment fee, plus interest on each at the legal rate from the date received.

Defendants must also return to Plaintiff: the original Jaleel Note and the original Jaleel Trust Deed; together with an executed and notarized assignment of deed of trust in recordable form, transferring the beneficial interest under the Jaleel Trust Deed back to Plaintiff; and an executed notice of transfer of servicing rights, notifying the Jaleels to resume making payments on the Jaleel Note to Plaintiff.

18

*2. Elder Abuse*

Plaintiff's elder abuse claim was based on Welfare and Institutions Code section 15610.30, which provides in relevant part: "(a) 'Financial abuse' of an elder or dependent adult occurs when a person or entity does any of the following: [¶] (1) Takes, secretes, appropriates, obtains, or retains real or personal property of an elder or dependent adult for a wrongful use or with intent to defraud, or both." Plaintiff tried this claim on the intent to defraud theory.

The court found Plaintiff did not prove "any intent to defraud by" Defendants. This finding was primarily predicated upon the court's conclusion that Phillips was Plaintiff's agent. The court relied on the fact she contacted Phillips to "be her broker" or "help her find 'investors,'" and that she "admit[ted] she hired Phillips and authorized him to act."

Plaintiff argues the finding that Phillips was her agent is erroneous as a matter of law. She maintains the record shows he was Defendants' agent, the court made no findings to the contrary, and Phillips could not legally be a dual agent.

Defendants assert the finding that Phillips was Plaintiff's agent is supported by substantial evidence and is correct as a matter of fact. They also maintain Plaintiff made no substantive argument and thus forfeited her elder abuse claim.

We need not address the agency issue. Regardless of whether Phillips was the agent of Plaintiff or Defendants, or the dual agent of both, there is insufficient evidence in the record to support Plaintiff's claim Defendants intended to defraud her.

Instead the evidence shows Defendants mistakenly but reasonably believed they had the option to choose between a loan under the Loan Agreement and a sale under the Loan Sale Agreement, and they chose the latter in good faith. As a result, the finding that Plaintiff did not prove Defendants had any intent to defraud must be sustained, and the portion of the judgment denying Plaintiff's elder abuse claim must be affirmed.

19

*3. Usury*

Our disposition of Plaintiff's rescission claim also moots her contention the exorbitant rate of interest to be paid on the loan was usurious. Because the entire 2007 transaction will be rescinded there will be no loan and no interest will have been paid.

*4. Phillips Default*

The second amended complaint filed on September 12, 2012 named Phillips and his companies (Universal Capital Investments and UCI Limited) as defendants in the first though fifth causes of action, for intentional misrepresentation, fraud in the execution, concealment, elder abuse, and rescission, respectively. Defaults to these claims were entered against Phillips and his companies on April 5, 2013. The statement of decision noted these defaults were taken before trial and stated "the default prove up will be adjudicated along with the trial." But it appears that did not happen. On remand the court must address these claims.

*5. Attorney Fees and Costs*

The court awarded a judgment against Plaintiff for attorney fees and costs in the amount of $142,822.46, based upon a finding Defendants were the prevailing parties. That finding must be reversed and that portion of the judgment must be vacated in light of our conclusion the entire 2007 transaction must be rescinded. On remand the court shall reconsider the prevailing party issue in light of this opinion.

**DISPOSITION**

The portion of the judgment denying Plaintiff's rescission claim is reversed and the matter is remanded to the trial court with directions to enter a judgment rescinding the entire 2007 transaction, upon payment of such restitution as the court determines is necessary to return the parties to the position they were in prior to the 2007 transaction. The portion of the judgment awarding Defendants attorney fees and costs is vacated and the matter is remanded with directions to reconsider the prevailing party issue. The portion of the judgment denying Plaintiff's elder abuse claim is affirmed. The

court is also directed to consider on remand the claims against the defaulted Defendants. The parties shall bear their own attorney fees and costs on appeal.


THOMPSON, J.

WE CONCUR:


MOORE, ACTING P. J.


ARONSON, J.